JOSEPH SMITH, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. Where an indictment contains two counts, the legal effect of a verdict finding defendant guilty as charged in the first count, is to acquit him of the offense charged in the second count.

2. When a statute makes either of two or more distinct acts connected with the same general offense, and subject to the same punishment, indictable as distinct crimes, they may when committed by the same person at the same time be coupled in one count and constitute but one offense; an information therefore under Section 1, Chapter 4373, acts of 1895, charging the defendant in one count with setting up, promoting and conducting lotteries, disposing of money by means of lotteries, conducting lottery drawings for distributing prizes by chance, and selling lottery tickets for money, is not bad for duplicity.

3. While Sections 1093 and 2925 Revised Statutes confer the legal right upon juries to be discharged where the circumstances therein mentioned exist, they were not designed to abridge in any way the judicial discretion vested in the judge to order such discharge whenever a proper case is presented for the exercise of such discretion, even though the circumstances warranting such discharge are not such as invest juries themselves, under the statute, with the right to demand their discharge.

4. Where in the trial of a felony not capital the jury retired to consider their verdict on the evening of one day and about noon of the following day were discharged by the court upon the assurance given through their foreman in open court that they could not agree upon a verdict, such discharge does not

operate as a bar to further prosecution of defendant under the same information even though the jury were discharged against his protest.

5. A plea of former jeopardy, alleging that defendant was put upon trial of the same information at a former day; that after taking the case under consideration under the charge of the court, and having same under advisement, the jury were without their own request and against defendant's protest discharged from further consideration of the case, but which fails to allege any facts showing that the jury were discharged arbitrarily or capriciously, or without cause or necessity, is bad on demurrer.

6. In felonies not capital the separation of a jury prior to the rendition of their verdict in court, either with or without the consent of the court, is at most a mere irregularity which does not entitle a defendant to his discharge, but may under certain circumstances furnish ground for a new trial.

7. In felonies not capital the court should not during a recess, and in the absence of the prisoner, permit the jury to seal their verdict and separate until the court convenes in pursuance of an adjournment previously ordered.

Writ of Error to the Circuit Court for Duval county.

The facts in the case are stated in the opinion of the court.

*John E. Hartridge*, for Plaintiff in Error.

*The Attorney General*, for Defendant in Error.

CARTER, J.:

On November 1, 1897, an information was filed against plaintiff in error in the Criminal Court of Record of Duval county, charging in the first count "that one Joseph Smith, of the county of Duval, and State of Florida, on the 1st day of June, in the year of our Lord one thousand eight hundred and ninety-seven, in

the county and State aforesaid, did then and there unlawfully and feloniously set up, promote and conduct lotteries for money, and did then and there by means of said lotteries then and there so set up and promoted dispose of money, and did then and there conduct divers lottery drawings for the distribution of prizes by chance, and did then and there sell lottery tickets for money;" and in the second count, "that the said Joseph Smith, of the county of Duval, and State of Florida, on the 1st day of June, A. D. 1897, in the county and State aforesaid, did then and there have, keep, exercise and maintain gaming rooms for the purpose of gaming and gambling." The defendant's motion to quash each count of this information was overruled and a trial entered upon November 1, 1897.

The jury having failed to agree upon a verdict, were discharged November 2, 1897, and another trial begun on the same day, which terminated in a verdict November 3, 1897, finding defendant guilty on the first count, with recommendation for mercy. Motions to discharge defendant, in arrest of judgment and for a new trial were made and overruled, and on November 5, 1897, sentence was pronounced against defendant, from which he sued out this writ of error.

The first count of the information was based upon section 1, Chapter 4373, acts of 1895, entitled, "An act to prohibit lotteries and games of chance, and to prescribe penalties therefor," reading as follows: "Section 1. That it shall be unlawful for any person, firm or corporation in this State to set up, promote or conduct any lottery for money or for anything of value, or by means of any lottery to dispose of money or other property of any kind whatsoever, or to conduct any lottery drawings for the distribution of prizes by lot or chance, or to advertise any such lottery scheme or de-

vice in any newspaper, or by circulars, posters, pamphlets or otherwise, or to sell or to offer for sale, or to transmit by mail or otherwise any lottery tickets, coupon or share in, or fractional part of any lottery ticket, share or coupon, or to attempt to operate, conduct or advertise any lottery scheme or device, or to have in his, their or its possession any lottery wheel, implement or device whatsoever for conducting any lottery, or scheme for the disposal by lot or chance of anything of value, or to have in his, their or its possession any lottery ticket or evidence of any share or right in any lottery ticket, or in any lottery scheme or device, or to have in his, their or its possession any lottery advertisement, circular, poster or pamphlet, or any list or schedule of any lottery prizes, gifts or drawings, or notice of any such lottery drawings, scheme or device, or to aid or assist in the setting up or conducting of any lottery either by writing, printing or otherwise, or to be interested in or connected in any way with any lottery or lottery drawing, or to aid or assist in the sale, disposal or procurement of any lottery ticket, coupon, share, or right to any drawing therein. Any violation of this section shall be a felony, and shall be punished by a fine of not less than $500, nor more than $5,000, or by imprisonment in the State penitentiary not less than one year, nor more than ten years, or by both such fine and imprisonment."

I. Several objections to the first count of the information were presented by the motion to quash, but one only is argued in this court, which confines us to a consideration of that alone. The objection urged is that the first count is bad for duplicity, in that it charges defendant with four distinct offenses under the statute quoted, *viz*: setting up, promoting and conducting lotteries; disposing of money by means of lotteries; conducting lottery drawings for distributing prizes by

Smith v. State of Florida—Opinion of Court.

chance; and selling lottery tickets for money. In Bradley v. State, 20 Fla. 738, we held that when a statute makes either of two or more distinct acts, connected with the same general offense, and subject to the same punishment, indictable as distinct crimes, they may when committed by the same person, at the same time, be coupled in one count, and constitute but one offense; that under a statute reading "whoever buys, receives, or aids in the concealment of stolen money, goods or property, knowing the same to have been stolen, shall be punished," &c., an indictment charging that defendant "feloniously did buy, receive and have, and did then and there aid in the concealment of certain stolen property of," &c., knowing the property to have been feloniously stolen, was not bad for duplicity; that the indictment in such a case might be either for the buying, or the receiving, or the aiding in the concealment of stolen property; or it might combine all these offenses in one count. See, also, King v. State, 17 Fla. 183. This case clearly falls within the principle of those decisions; consequently the court below properly declined to quash the first count of the information. It is unnecessary for us to consider the ruling refusing to quash the second count, as the legal effect of the verdict rendered, acquits the defendant of the charge contained therein. Green v. State, 17 Fla. 669.

II. The bill of exceptions shows that at the first trial, begun November 1, 1897, the case was submitted to the jury on the evening of that day; that about twelve o'clock the next day, the jury not having agreed upon their verdict, the court instructed the sheriff to bring them into court for the purpose of discharging them— the defendant protesting against such discharge; that the jury were brought into court and asked if they had agreed upon a verdict, and replied, "No;" that defend-

ant again protested against the discharge of the jury. on the ground that they had not requested to be discharged, and had not come into court and asked to be discharged as required by the statute; that the judge stated that he had received such a note, but defendant replied that a note from a juror was not a request of the jury as required by law; that thereupon the judge asked the foreman if there was any chance of an agreement, who answered, "No." Thereupon the jury was discharged, to which defendant excepted. The record entry of this transaction shows that the case was given to the jury on November 1, 1897, and they had not agreed upon a verdict when the court adjourned for the day; that on November 2, 1897, the jury reported to the court that they were unable to agree, and were called into court and again reported that it was impossible to reach a verdict in the cause on account of a disagreement; and that thereupon, they were discharged from further consideration of the case. It is insisted that the discharge of the jury under these circumstances operated as a bar to any further prosecution under the information, and it was sought to be made available for this purpose by various motions in the court below, and also by a special plea which will be referred to in the next succeeding paragraph of this opinion. The argument in this court is that sect"·ns 1093 and 2925 Revised Statutes furnish the exclusive rule by which the dis-·charge of a jury for disagreement may be effected, and that as these provisions we.:e not complied with in this case, the claim of former ɔpardy is well founded. These two sections are practic .ily in the same language, and they provide that "Wl.èn a jury, after due and thorough deliberation upon any cause shall return into court, without having agreed upon a verdict, the court may explain to them anew the law applicable to the

case and may send them out again for further delibera-
tion; but if they shall return a second time without hav-
ing agreed upon a verdict, they shall not be sent out
again without their own consent, unless they shall ask
from the court some further explanation of the law."
In Tervin v. State, 37 Fla. 396, 20 South. Rep. 551, we
held that while these provisions confer the legal right
upon juries to be discharged where the circumstances
therein mentioned exist, they were not designed to
abridge in any way the judicial discretion vested in the
judge to order such discharge whenever a proper case
is presented for the exercise of such discretion,
even though the circumstances warranting such dis-
charge, are not such as invest juries themselves, under
the statute, with the right to demand their discharge.
In Ellis v. State, 25 Fla. 702, 6 South. Rep. 768, it is
held that the arbitrary discharge of a jury, against the
consent of the accused, without any cause, and where
no circumstances exist calling for the exercise of the
court's discretion, is a bar to a subsequent trial upon
the same indictment; but that the discharge of a jury
in cases of manifest necessity, such as the sudden illness
of a juror, the illness of a prisoner or other urgent cause,
will not exempt the prisoner from again being tried.
We think the facts of this case were such as to call for
the exercise of the discretion of the court, and there
is nothing in the record showing an abuse of discretion.
The jury had retired on the evening of one day, and
were not discharged until about noon of the next day.
They were not discharged until they were called into
open court, and through their foreman had assured the
court of their inability to agree upon a verdict, after a
reasonable time spent in the effort to agree. Ellis v.
State, 25 Fla. 702, 6 South. Rep. 768; Tervin v. State,

37 Fla. 396, 20 South. Rep. 551; Adams v. State, 34 Fla. 185, 15 South. Rep. 905.

III. The defendant on November 2, 1897, filed a plea alleging that he had been duly tried at the same term by a jury duly empanelled and sworn; that the jury after taking the case of defendant under consideration under the charge of the court, and having same under advisement, were without the request of said jurors, as a jury, called into court by the judge of said court, and discharged without the consent and under the protest of defendant from the further consideration of said cause. The County Solicitor demurred to this plea upon the ground that the facts alleged were insufficient as a matter of law to constitute a defense. It is argued in this court that the plea tendered an issue of fact which should have been tried by a jury, and that the facts alleged were sufficient to show former jeopardy. The demurrer admitted the truth of the matters alleged in the plea, and submitted them to the court for the purpose of determining whether as a matter of law they constituted a defense. If, therefore, the demurrer was properly sustained, the facts ought not to have been submitted to the jury as claimed. It will be observed that this plea did not allege that the jury were discharged arbitrarily, or capriciously, or without cause; but simply without their consent, and against the consent and over the protest of the defendant. There is no law which prohibits the discharge of a jury without their consent, or without the consent of a defendant. Whenever a necessity arises which calls into action the discretion of the court, this discretion is not necessarily controlled by the wishes of the jury or the defendant. As the plea does not negative the idea that the jury were discharged for sufficient cause, the demurrer was

properly sustained.   Tervin v. State, 37 Fla. 396, text, 403, 20 South. Rep. 551.

IV.  It appears that at the second trial, begun November 2, 1897, the jury received the charge and retired to consider their verdict; that a few minutes after eleven o'clock, P. M., the jury were notified that if they could not agree upon a verdict within ten minutes the court would take a recess until nine o'clock A. M. next day; that the jury not having agreed upon their verdict within the time stated, the court placed the jury in charge of a specially sworn bailiff for the night, and ordered a recess until nine o'clock A. M.   After the judge reached his home and had retired for the night (about 11:45 P. M.), he received a written message from the bailiff to the effect that the jury had agreed upon a verdict and desired to know if they could seal it and separate until nine o'clock next morning.   The judge sent for the clerk of the court, and at his residence instructed the clerk to inform the jury that they could, if they so desired, deliver to the bailiff their verdict sealed in accordance with instructions given the clerk, and separate until next morning.   These instructions were followed, but the defendant was not present, neither was his counsel, nor did they have any information of these proceedings until next morning.   When the court met next morning the jurors were in their places, and the sealed verdict being handed them, they pronounced same to be their verdict; and being polled by order of the court, each juror affirmed the verdict.   The defendant by motions to discharge, in arrest, and for a new trial, sought to avail himself of this irregular proceeding.

It is insisted that this action of the court operates as a discharge of the defendant from further prosecution, and is not merely an error causing a reversal of

the judgment. It will be observed that the jury were not discharged; they were simply permitted to separate until the reassembling of the court, after having agreed upon a verdict. In the case of Frances v. State, 6 Fla. 306, it was held that the court has power during the trial of any case not capital, in the exercise of a sound discretion, to permit a jury, under the proper charge, to separate. And in Bird v. State, 18 Fla. 493, it was held that the mere separation of the jury, without the consent of the court is not sufficient ground for a new trial. See, also, State v. Madoil, 12 Fla. 151; Tervin v. State, 37 Fla. 396, 20 South. Rep. 551. Under these authorities the separation of the jury, either with or without the consent of the court, can not be held to entitle a defendant to his discharge, but at most is an error which may authorize a new trial. We thing the action of the court below in permitting the jury to separate was erroneous, and necessitates a reversal of the judgment. The defendant was charged with a felony, and he not only had a right to be present when this order was made, but the court had no right to make an order without his presence, whereby the jury then considering his case were permitted to separate before their vrdict was received in court, certainly not without a necessity calling for it. In the case of Holton v. State, 2 Fla. 467, it appeared that after the jury had retired, the judge instructed the sheriff that if they did not agree in one hour to adjourn the court until the next morning. Between eleven and twelve o'clock at night the jury sent to the judge by a bailiff for his charge, and on a message from the judge the clerk made out and furnished the jury with what purported to be a copy of the charge. This was done without the knowledge of the prisoner, and this court held that the action of the trial court was tantamount to recharging the jury in the ab-

sence of the defendant, and granted a new trial. It was also there held that no communication whatever ought to take place between the judge and the jury, after the cause has been committed to the jury, and they have been charged by the court, unless in open court and in the presence of the defendant; and if practicable, of his counsel. That case is decisive of the present question, and it has been often quoted and approved in subsequent decisions of this court. Adams v. State, 28 Fla. 511, 10 South. Rep. 106; Summeralls v. State, 37 Fla. 162, 20 South. Rep. 242.

The assignments of error present other questions which we do not deem it essential to pass upon at this time. For the error pointed out the judgment of the court below is reversed and a new trial granted.